Order Entered.

Patrick M. Flatley
United States Bankruptcy Judge
Dated: Tuesday, October 03, 2006 1:10:04 PM

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

| | |
|---|---|
| IN RE: | ) |
| | ) |
| PAUL ADAM FREEMAN | ) CASE NO. 3:05-bk-06791 |
| | ) |
| Debtor. | ) |
| | ) |
| IN RE: | ) |
| | ) |
| KERRY VINCENT SCOTT, and | ) |
| MONICA DENISE SCOTT | ) CASE NO. 3:04-bk-00469 |
| | ) |
| Debtors. | ) |

## MEMORANDUM OPINION

Paul Adam Freeman, and Kerry and Monica Scott (collectively the "Debtors"), filed motions to allow Capital One Auto Finance ("Capital One") to send them monthly statements of account pursuant to W. Va. Code § 46A-2-114.  Capital One objects to the motions on the grounds that its computer system is designed to cease all correspondence with bankrupt debtors, the system is not programmed to send the Debtors monthly statements only, and that granting the Debtors' requested relief would result in Capital One making collection efforts in potential violation of the automatic stay.

The court held a telephonic hearing in these matters on June 27, 2006, in Wheeling, West Virginia, followed by a court hearing in Martinsburg, West Virginia on July 21, 2006, and then a second telephonic hearing in Wheeling, West Virginia on September 6, 2006.  The parties have fully briefed the issue and it is ripe for review.  For the reasons stated herein, the court will modify the automatic stay to allow Capital One to send the Debtors monthly statements of their accounts.

1

## I. BACKGROUND

When Mr. Freeman filed his Chapter 13 bankruptcy on December 13, 2005, he listed Capital One as having a secured interest in the amount of $6,289 in a 1999 Ford Pickup, having a stated value of $5,221. Under Mr. Freeman's proposed Chapter 13 plan, he will make his regular monthly payments directly to Capital One and there is no pre-petition arrearage claim to be paid through his proposed 13 plan.[1]

Similarly, when Kerry and Monica Scott filed their Chapter 13 bankruptcy petition on February 17, 2004, they listed Capital One as having a secured interest in the amount of $19,000 in a 2004 Ford Escape, having a stated value of $17,000. Under the Scotts' confirmed Chapter 13 plan, they are to make payments directly to Capital One and there is no pre-petition arrearage claim to be paid through their confirmed plan.

Because the Debtors are to retain and pay for their vehicles under the terms of their plans, they request that the court direct Capital One to send them monthly statements of their accounts and that Capital One be able to do so without fear of violating the automatic stay of the Bankruptcy Code. Receipt of monthly statements will help ensure that the Debtors timely make their monthly payments.

James Redding, the Senior Operations Manager at Capital One, submitted an affidavit stating that Capital One's computer system houses information for every automotive loan in its nationwide portfolio. The system uses "status codes" that determine what actions will be taken on an account. Placing an account in "Bankrupt Status" prevents automated collection activities such as calls, letters, and repossession. The system, however, is not designed to send "bankruptcy safe" notices – there is not an individual code to allow monthly statements to be sent and another for the initiation of collection activity. Thus, an account in "Bankrupt Status" will not receive any communications from Capital One. Mr. Redding further states that no manual override exists whereby an account may be modified to only send monthly

---

[1] At the time this Memorandum Opinion was issued, Mr. Freeman's plan had not been confirmed by the court.

2

statements, and that Capital One would incur substantial costs if it is required to modify its system.[2]

## II. DISCUSSION

Capital One objects to the Debtors request to modify the automatic stay to allow it to send monthly statements, as required by State law, on the grounds that: (1) State law is preempted by the Bankruptcy Code, (2) requiring it to send monthly statements to the Debtors would impose an undue economic burden on it, and that (3) it cannot send monthly statements without also initiating collection activities in potential violation of the automatic stay.

### A. Preemption

Capital One asserts that the automatic stay of the Bankruptcy Code prevents it from sending the Debtors monthly statements of their accounts, which would otherwise be required under State law.

The automatic stay of the Bankruptcy Code prohibits, inter alia, "any act to collect, assess, or recover a claim against the debtor that arose before the commencement of [the bankruptcy case.]" 11 U.S.C. § 362(a)(6). Under West Virginia law, however, a creditor is required to "deliver or mail to the consumer, without request, a written receipt for each payment by coin or currency on an obligation pursuant to a consumer credit sale, consumer lease or consumer loan." W. Va. Code § 46A-2-114(1). If a monthly statement of account is deemed to be an attempt to collect on a pre-petition debt, then the provisions of the automatic stay may preempt the West Virginia law on consumer statements of account. *See, e.g.*, *Eastern Equip. & Servs. Corp. v. Factory Point Nat'l Bank*, 236 F.3d 117, 121 (2nd Cir. 2001) (holding the automatic stay preempts contrary state law and that the Bankruptcy Code provides the exclusive remedy for stay violation cases); *MSR Exploration, Ltd. v. Meridian Oil, Inc.*, 74 F.3d 910, 913-16 (9th Cir. 1996) (same); *In re Martinez*, 281 B.R. 883, 885-86 (Bankr. W.D. Tex. 2002) (noting the "perverse consequences (at least in some situations)" resulting from the automatic stay's prohibition on sending monthly statements to a debtor, and prospectively approving an innocent notice procedure that

---

[2] The Debtors filed identical motions with regard to secured debts owing to Ford Motor Credit and Sun Trust Bank. Those motions were resolved by agreed orders whereby the creditors consented to the relief requested by the Debtors.

would not give rise to damages in a future stay violation action); *cf.*, *Ramirez v. GMAC (In re Ramirez)*, 280 B.R. 252, 258 (C.D. Cal. 2002) (holding that where a debtor exercises his right to retain and pay for collateral the creditor may send monthly statements to the debtor without violating the discharge injunction of § 524 because to hold otherwise would "force debtors to guess, with little guidance, the due date and proper amount of their monthly payments [which] would unduly complicate the lives of debtors and likely result in a greater number of missed payments and foreclosures by creditors."); Bankr. M.D.N.C. R.4001-1(b)(4) (allowing a creditor in a Chapter 13 case, after confirmation, to inquire of the debtor about the status of direct payments).[3]

In this case, however, the court does not need to decide whether § 362(a) of the Bankruptcy Code preempts § 46A-2-114 of the Code of West Virginia because the court will grant the Debtors' motion to modify the automatic stay, which will, in effect, allow W. Va. Code § 46A-2-114 to govern the parties course of dealing.

**B. Undue Burden**

Capital One asserts that the automatic stay in these cases should not be modified to allow it to send monthly statements to the Debtors on the grounds that the costs of reprogramming its computer system to both allow the mailing of monthly statements and prohibit corresponding collection activities is too substantial when compared to the Debtors' individual need to receive monthly statements.

These cases present the *unusual* situation where the Debtors are seeking to waive (partially) the benefit provided to them by the automatic stay, and Capital One – whom is not the intended beneficiary of the stay – is seeking to have the automatic stay remain in place. Section 362(d) of the Bankruptcy Code gives the court discretion in fashioning relief from the automatic stay to the particular circumstances of a case, "such as by terminating, annulling, modifying, or conditioning such stay." 11 U.S.C. § 362(d). *See,*

---

[3] With regard to the discharge injunction, which is not applicable until a debtor has completed the Chapter 13 plan, newly enacted § 524(j) of the Bankruptcy Code allows a secured creditor in the debtor's principal residence to seek or obtain periodic payments from the debtor in the parties' ordinary course of business. 11 U.S.C. § 524(j). This section is not applicable here because it is the automatic stay and not the discharge injunction that is applicable, and Capital One is secured in the Debtors' vehicles – not their personal residences.

4

*e.g.*, *In re Brown*, 311 B.R. 409, 412 (E.D. Pa. 2004) ("[T]he decision whether to modify, condition or annul the bankruptcy stay under section 362(d) is committed to bankruptcy court discretion and is to be determined by examining the totality of the circumstances; a denial of a motion to lift the automatic stay may be reversed only upon a showing of an abuse of that discretion.").

Capital One states that it has thousands of accounts in "Bankrupt Status." Therefore, the burden in this case to be weighed is not just between Capital One and the Debtors, but between Capital One and all other potential debtors that might desire to receive monthly statements of account. Mr. Redding's affidavit only stated that the cost to Capital One to reprogram its "status code" system "would be substantial and unduly burdensome." No other evidence was submitted on what the exact costs would be to Capital One, or on how those costs would be outside its normal course of business in servicing consumer automobile loans. In short, the court finds Capital One's "undue burden" argument to be unsupported by the facts and ultimately unconvincing.

**C. Stay Violation**

Finally, Capital One argues that if the court grants the Debtors' motions to modify the automatic stay then it will be requiring Capital One to violate the automatic stay on the basis that its computer system cannot be easily reprogrammed to only send the Debtors monthly statements and not collection notices. Capital One further states that "opening the door to allow some collection activity would create uncertainty for creditors in determining what practices violate the automatic stay and unnecessary consternation for courts to decide if these post-petition collection activities violate the automatic stay."

The court, of course, does not have any control over how Capital One conducts its business and will not become entangled in its internal affairs. Moreover, the court's ruling does not *compel* Capital One to send monthly statements as requested by the Debtors. The court is only modifying the automatic stay to *permit* Capital One to send the Debtor monthly statements to the extent that it may be required to do so by State law – any other collection activity outside the scope of that modification may constitute a violation of the automatic stay for which Capital One might be held accountable under 11 U.S.C. § 362(k). The court does not believe that this modification will create any "uncertainty." In fact, it appears to the court that the "uncertainty" posited by Capital One relates not to an assessment as to whether its conduct may constitute a violation of the automatic stay, but, rather, whether it can or should modify its business

5

practices. Consideration of such an issue is beyond the ken of this court. Nevertheless, the court can find no compelling reason under the limited circumstances of the Debtors' motions to, in effect, direct that Capital One be excused from whatever its obligations may be under State law.

### III. CONCLUSION

The court will modify the automatic stay to allow Capital One to send the Debtors monthly statements pursuant to W. Va. Code § 46A-2-114. A separate order is attached pursuant to Fed. R. Bankr. P. 9021.